UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LIGIA COLCERIU, and those similarly situated,**

    Plaintiff,

v.                                                          Case No: 8:20-cv-1425-MSS-AAS

**JAMIE BARBARY and
ENGELHARDT & CO. LLC,**

    Defendants.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Dismiss, (Dkt. 24), and Plaintiff's Response in opposition thereto. (Dkt. 27) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint with leave to amend within **twenty-one (21) days** of this Order.

I.     **BACKGROUND**

On June 20, 2020, Plaintiff Ligia Colceriu brought this putative class action against Defendants Jamie Barbary and EngelHardt & Co. LLC ("EngelHardt") (collectively, the "Defendants"). (Dkt. 1) Plaintiff asserts diversity jurisdiction under 29 U.S.C. § 1332 as a basis for federal jurisdiction. (Id. at ¶ 31) In the four-count

Complaint, Plaintiff asserts claims of illegal operations of a lottery, negligent misrepresentation, and unjust enrichment, and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"). (Id. at ¶¶ 76-97) The relevant facts alleged are as follows:

Defendants operate a business that assists Instagram users with growing an audience of followers. (Id. at ¶ 35) For example, Defendants offer a "Growth Package" that would generate 10,000 new followers for $3,999.00. (Id. at ¶ 43) To generate new followers for their clients, Defendants pay Instagram influencers [1] to advertise giveaways to their followers. To enter the giveaway, the influencers' followers are required to follow Defendants' Instagram account along with the accounts of Defendants' clients, thereby, increasing the number of the clients' followers. Id. at ¶¶ 37, 49-51) For instance, one influencer posted that "I'm teaming up with my friends at @jbsocialcollective to give THREE of you $3,000 cash!" (Dkt. 1-4) Another influencer posted that "[t]o enter [the giveaway], follow @jbsocialcollective and all the accounts [Defendants] are following!" (Id.)

In April 2020, Plaintiff alleges she "saw that [a] few of the influencers she follows [on Instagram] organized a 'giveaway' with total cash prizes of $9,000." (Dkt. 1 at ¶ 53) To enter the giveaway, Plaintiff followed sixty-two (62) Instagram profiles, all the accounts followed by Defendants. (Id. at ¶ 54) Plaintiff claims she was unaware

---

[1] An influencer, in this context, is defined as an individual who has "access to a large audience and can persuade others" because of their popularity on Instagram. See What is a Social Media Influencer?, PIXLEE, https://www.pixlee.com/definitions/definition-social-media-influencer (last visited June 8, 2021).

that Defendants "received direct cash or other benefits" for each profile that she followed for the giveaway. (Id. at ¶ 55) Plaintiff did not receive a prize from the giveaway and does not know the results of the giveaway. (Id. at ¶ 57)

On June 20, 2020, Plaintiff filed a four-count Complaint against Defendants for the operation of illegal lotteries ("Count I"), unjust enrichment ("Count II"), negligent misrepresentation ("Count III"), and violations of FDUPTA ("Count IV"). (Id.) Defendants filed a Motion to Dismiss, contending that Plaintiff lacks standing to bring this claim, and, therefore, the Court lacks subject matter jurisdiction. (Dkt. 24) In the alternative, Defendants posit that Plaintiff fails to state a cause of action upon which relief may be granted. (Id.) For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint with leave to amend.

## II.   LEGAL STANDARD

Federal courts are courts of limited subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). The party invoking subject matter jurisdiction bears the burden of proving Article III standing. Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1265 (11th Cir. 2011) (citation omitted). For standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

Spokeo, 136 S.Ct. at 1547. When ruling on standing at the motion to dismiss stage, a court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).

### III. DISCUSSION

The issue before the Court is the first element of standing — injury-in-fact. The plaintiff must clearly and specifically set forth facts showing an injury-in-fact; conclusory allegations will not suffice. Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 924-25 (11th Cir. 2020) (citation omitted). To establish injury-in-fact, the plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical. Spokeo, 471 F.3d at 1548 (citation and internal quotation marks omitted). A particularized injury is one that affects the plaintiff "in a personal individual way." Id. For the injury to be concrete, the injury must be "real," meaning that "it must actually exist" and not "abstract." Id.

A statutory violation alone is not a concrete injury. See Muransky, 979 F.3d at 925 ("[S]tatutory violations do not—cannot—give [the court] permission to offer plaintiffs a wink and a nod on concreteness.) If a plaintiff's injury stems from a statutory violation, the plaintiff must show that she suffered a harm from the violation. Id. at 926. If the plaintiff does not suffer a harm directly from the defendant's violation of a statute, the plaintiff can show an injury-in-fact by showing that a statutory violation created a "risk of real harm." Id. at 927 (citation omitted).

As the party invoking federal jurisdiction, Plaintiff must allege a basis for Article III standing, including an injury-in-fact. Defendants contend that the allegations in the Complaint fail to establish an injury-in-fact. (Dkt. 24 at 5-9) Specifically, Defendants argue that Plaintiff has not pleaded any facts that show her injury is concrete. (Id. at 8-9) In her response, Plaintiff appears to assert that her time was wasted when she followed the 62 Instagram profiles to enter the giveaway and when her Instagram "feed was instantly invaded by hundreds of unrelated [posts]." (Dkt. 27 at 9) Yet, the Complaint does not allege that Plaintiff's time was wasted or the degree to which it was wasted by Defendant's actions or that Plaintiff suffered an injury related to an "invasion" of her social media feed by the profiles she followed. Moreover, it is not clear that a mere waste of time, voluntarily expended, could suffice to establish injury-in-fact. See generally Muransky, 979 F.3d at 926 (recognizing that a claim of wasted time is not always an injury-in-fact); Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019) (holding that claims of wasted time that constitute a "brief, inconsequential annoyance" cannot "invoke the jurisdiction of the federal courts."); Perez v. Golden Trust Insurance, Inc., 470 F.Supp. 3d 1327, 1328 (S.D. Fla. July 6, 2020) (holding that a plaintiff did not suffer an injury-in-fact when plaintiff spent time reviewing unsolicited text messages from the defendant as the messages did not render the plaintiff's cell phone useless.).

Regarding Plaintiff's claims that Defendants violated § 849.09 and FDUTPA, Plaintiff does not allege any specific injuries but only that she suffered a loss. (Dkt. 1 at ¶¶ 76-79, 87-97) With respect to Plaintiff's claims for unjust enrichment and

negligent misrepresentation, Plaintiff states that she "continue[s] to suffer injuries as a result of the Defendants' actions." (Id. at ¶ 81) Plaintiff cannot satisfy her burden to prove standing by merely alleging that Defendants violated Florida statutes or by simply intoning the word "injury." Accordingly, the Court finds that Plaintiff has failed to allege an injury-in-fact, and thus, failed to allege Article III standing necessary to sustain her claim.

Without Article III standing, Plaintiff cannot invoke the Court's jurisdiction to consider the remaining arguments raised in Defendants' motion to dismiss.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss, (Dkt. 24), is **GRANTED**.

2. Plaintiff's Complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff shall have up to and including **twenty-one (21) days** from the date of this Order to file an amended complaint that cures the defects noted in this Order. **Failure to do so may result in dismissal of this action without notice.**

**DONE** and **ORDERED** in Tampa, Florida, this 14th day of June 2021.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person