**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LIGIA COLCERIU, on behalf
of herself and all others
similarly situated,

       Plaintiff,                 Case No. 8:20-cv-01425-MSS-AAS

  v.

JAMIE BARBARY a/k/a JAMIE
ENGELHARDT, ENGELHART &
Co., LLC,

       Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

## **INTRODUCTION**

The Court dismissed this action because Plaintiff "failed to allege an injury-in-fact, and thus, failed to allege Article III standing necessary to sustain her claim." (ECF No. 43 at 6.)  The new allegations in Plaintiff's First Amended Complaint (the "Amended Complaint") fail to cure this fundamental defect.

Plaintiff has filed at least two putative class actions predicated on the same set of allegations:  she played in multiple *free* "giveaway" contests in April 2020 in search of "easy way[s] of getting money" (Am. Compl. at ¶ 63) but did not win. *Compare* ECF No. 44 to *Colceriu v. Influize, Ltd.*, Case No. 2021-CA-004981, Complaint (Fla. 15th Jud. Cir. Ct.), attached as **Exhibit 1**.[1]  She does not allege any actual loss.  Indeed, even though the Court specifically cautioned Plaintiff that, under Eleventh Circuit law, it was not clear that "a mere waste of time, voluntarily expended, could suffice to establish injury-in-fact" (ECF No 43. At 5), Plaintiff's amended allegations plead little more than that, alleging that "[i]t took much longer than 30 seconds" to voluntarily enter the giveaway.  (Am Compl. at ¶ 64.) Other than this loss of time, Plaintiff does not plead any purported loss or injury that she claims was caused by Defendants.

Plaintiff's other new allegations are conclusory and impertinent.  She claims

---

[1] The Court can take judicial notice of this filing.  *See, e.g.*, *Head v. Cullen*, 3:18-CV-108-J-34MCR, 2019 WL 4451455, at *3 (M.D. Fla. Sept. 17, 2019) (courts may take judicial notice of state court documents and filings for purposes of a motion to dismiss) (citing cases).  Plaintiff's attorney has filed other suits with another plaintiff based on the same allegations.  *See Chihaia v, Go Giveaways LLC, et al.*, Case No. 2021-009231-CA-01, Complaint at ¶¶ 48-53 (11th Jud. Cir. Ct.), attached  as **Exhibit 2**.

that "[r]ight after" she entered this free "giveaway" in April 2020—at the same time she entered into other giveaways in search of easy money (*see* Exs. 1 and 2)—she began receiving "unsolicited updates and advertising"[2] on her Instagram feed from accounts that *she was voluntarily following*. (Am. Compl. at ¶¶ 65-67.) To be sure, she does not allege that ***Defendants*** sent her any unwanted update or advertising, and she does not allege any plausible allegation that ***Defendants*** (rather than the other accounts she continued to voluntarily follow) were the cause of her receipt of any unwanted update or advertising. Plaintiff's new allegations thus confirm that the only purported harm she is claiming is lost time (some nonspecific amount of time "more" than 30 seconds) and the receipt of unsolicited updates from Instagram accounts she was *voluntarily* following when she *voluntarily* signed in to an Instagram platform that she *voluntarily* joined. She could have clicked "unfollow"—instead, she seeks to invoke the jurisdiction of the federal courts to try to state a ***federal RICO claim*** against a one-person business that she is accusing of criminal conduct.

Plaintiff's new allegations are no more than dressed-up versions of the allegations that the Court rejected after holding that Defendants cannot "simply inton[e] the word 'injury.'" (ECF No. 43 at 6.) That rule is even more clear today than it was when Plaintiff's first Complaint was filed. The Supreme Court made

---

[2] These new allegations vaguely refer to inappropriate content of some of these messages sent by these other accounts. (Am. Compl. at ¶¶ 65-67.) These allegations have no proper purpose other than to embarrass Ms. Engelhardt (the individual defendant and owner of the other defendant)—there is no allegation suggesting that the content of these messages is relevant to the purported injury claimed—and are properly subject to Rule 12(f).

clear earlier this year in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) that a plaintiff seeking to invoke federal standing must allege "a completed violation of a ***legal right***," *id.* at 802, and Florida courts in recent months have repeatedly applied that rule to dismiss cases for lack of standing. *See Mgmt. Props., LLC v. Town of Redington Shores, Fla.*, 2021 WL 1530889, at *6 (M.D. Fla. Apr. 19, 2021) (under *Uzuegbunam*, plaintiff failed to allege a "completed violation of a legal right"); *Valley Nat'l Bank v. Warren*, 2021 WL 1597960, at *3-4 (M.D. Fla. Apr. 23, 2021) (plaintiff did not allege violation of a "legal right" or "harm that is concrete"); *Keim v. South Fla. Fair and Palm Beach Cty.*, 2021 WL 1588819, at *4 (S.D. Fla. Apr. 23, 2021) (same).  Undoubtedly, there is no violation of a *legal right* when someone voluntarily participates in a *free* giveaway and loses, and there is no violation of a legal right from receiving purportedly unwanted messages on a *voluntary* platform from accounts *voluntarily* followed.

Defendants respectfully submit that Plaintiff's claims again be dismissed for lack of standing.  And Defendants also respectfully submit that Plaintiff's claims are independently subject to dismissal because they fail under Federal Rules of Civil Procedure 8(a) and 9(b).  As set forth below, Plaintiff purports to bring claims under statutes for which there is no private cause of action and which specifically require a showing of actual injury, even though this Court already found that "Plaintiff does not allege any specific injuries but only that she suffered a loss." (ECF No. 43 at 5.)  As detailed below, not only did Plaintiff fail to correct the deficiencies identified by the Court in its Order, but Plaintiff also failed to address

any of the other pleading deficiencies established in Defendants' prior Motion to Dismiss. Accordingly, Defendants respectfully submit that Plaintiff, having been given two chances to identify a concrete injury that simply does not exist, should not be given a third opportunity to pursue this unprecedented theory of liability.

## FACTUAL ALLEGATIONS

Plaintiff remains mostly a bystander in her amended pleading. She is rarely referenced in the copy-and-paste allegations her attorney has used in at least three lawsuits (*see supra* at Exs. 1 and 2) that compare the widely-popular free giveaways played by millions on Instagram to a "bank heist." (Am. Compl. at ¶ 71 n.8.) She alleges that these free giveaways are "illegal lotteries" that "omit crucial and required information from their posts or tell outright lies" to convince Instagram users to voluntarily participate in these free contests. (*Id.* at ¶¶ 21, 57.) The defendants sued by Plaintiff in this and other cases are alleged to be organizers of these free giveaways who collect money from Instagram "micro-influencers" who want to increase their "followers" on Instagram, and then invite Instagram users to participate in free "giveaways" by clicking "follow" on the "micro-influencers'" Instagram profiles. (*Id.* at ¶¶ 21-22.)

The limited allegations that actually relate to Plaintiff allege that she (i) learned of the April 2020 contest, "an easy way of getting money," through accounts she already followed, (ii) researched Defendants' account and the profiles of "all" influencers promoting the lottery, and (iii) knew she would receive updates, posts, and stories from the "micro-influencer" accounts she was required to follow.

(*Id.* at ¶¶ 7, 48, 62, 63.)[3] Yet, she voluntarily clicked "Follow" on those accounts, taking over "30 seconds," so she could potentially win a prize. (*Id.* at ¶ 63.)

In response to the Court's dismissal of her prior pleading, her Amended Complaint now alleges without any plausible factual support that Plaintiff thinks that, by following these accounts, others had "access to her data." (*Id.* at ¶ 65.) She does not allege what access to her data anyone had, whether any of that data actually was accessed, and does not even allege that it was non-public data—which she could not, as she voluntarily published that data on Instagram. She also alleges that she started receiving "unsolicited updates and advertising" on her Instagram feed from each of the accounts she voluntarily followed (*id.* at ¶ 66) without plausibly linking any of these messages to conduct by the Defendants. Finally, she alleges that she wasted "time following 62 unrelated accounts" and "had to continue to parse through her feed and these accounts to determine who had won the lotter[y] [and] how and when the prize was awarded." (Am. Compl. at ¶ 70.)[4]

---

[3] Plaintiff says she was not told that the "influencers" were "paid to advertise the lottery" or that "micro-influencers paid [Defendants]" to be placed on the list of profiles to be "followed" to participate in the lotteries. (*Id.* at ¶¶ 57, 59, 63). But her other allegations contradict these claims. She alleges that Engelhardt & Co.'s website plainly disclosed that "influencers" whose profiles she clicked to "follow" were charged to grow their audience through giveaways with high-profile influencers. (*Id.* at ¶¶ 42, 43, 46, 59, 62, Ex. 2.)

[4] Plaintiff's Amended Complaint does not and cannot add any allegations supporting her claim that the giveaway was illegal. She alleges only that she "never received a prize" while Defendants supposedly "became richer." (*Id.* at ¶¶ 69, 70.) But Plaintiff does not plead any facts showing that the giveaway was "manipulated or rigged," arbitrarily removed or disallowed her entry, "fail[ed] to award prizes offered," or used material that was "false, deceptive, or misleading." *See* Fla. Stat. § 849.094(2)(a)-(d).

## <u>MEMORANDUM OF LAW AND LEGAL ARGUMENT</u>

I.  **PLAINTIFF HAS NOT PLEADED A CONCRETE INJURY SUFFICIENT TO ESTABLISH ARTICLE III STANDING.**

### A.   Legal Standard

Article III of the United States Constitution defines the role of the judiciary as resolving "Cases" and "Controversies."  Art. III, § 2; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  Standing to sue is a "core component" of this case or controversy requirement, "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A party invoking federal jurisdiction must "clearly . . . allege facts" showing standing for each claim and form of relief before a court may exercise jurisdiction.  *TransUnion LLC v. Ramirez*, 141 S. Ct.  2190, 2200 (2021); *Spokeo*, 136 S. Ct. at 1548 (quotations and citations omitted).   Conclusory allegations are insufficient. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020).

The issue before the Court is again the first element of standing—injury-in-fact.  A plaintiff must establish an injury in fact that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  "[T]he requirement of injury in fact is hard floor of Article III jurisdiction that cannot be removed by statute."  *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019) (quotation omitted).

### B.   Plaintiff fails to plead a concrete and particularized injury.

To allege a particularized injury, the plaintiff must allege facts showing that

she has suffered some actual or threatened injury that "affects the plaintiff 'in a personal individual way.' " (*See* ECF No. 43 at 4 (citing *Spokeo*, 136 S. Ct. at 1548).) A "statutory violation alone is not a concrete injury." (ECF No. 43 at 4 (citing *Muransky*, 979 F.3d at 925).) A plaintiff must allege that she "suffer[ed] a harm directly from the defendant's violation of a statute." (*Id.* (citing *Muransky*, 979 F.3d at 926)); *see Whisman v. Designer Brands Inc.*, 2021 WL 2389544, at *2 (S.D. Fla. June 11, 2021) (finding insufficient bare allegations of recognized harms statute was designed to prevent).

To allege a "concrete" injury, "the injury must be 'real,' meaning that 'it must actually exist' and not 'abstract,'" or "hypothetical or speculative." (ECF No. 43 at 4 (citing *Spokeo*, 136 S. Ct. at 1548); *Salcedo*, 936 F.3d at 1167. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 141 S. Ct. at 2200. Stated differently, to show an injury-in-fact a plaintiff must allege "a completed violation of a legal right." *See Uzuegbunam*, 141 S. Ct. at 802; *see also Mgmt. Properties, LLC*, 2021 WL 1530889, at *6 (plaintiff failed to allege facts connecting nominal damages to a "completed violation of a legal right") (analyzing *Uzuegbunam*).

### 1.   Plaintiff's allegations of wasted time do not allege an injury-in-fact.

In dismissing Plaintiff's prior Complaint, the Court cautioned Plaintiff that although she had not alleged that her "time was wasted or the degree to which it

was wasted by Defendant's actions," doing so in an amended pleading would not necessarily suffice under Eleventh Circuit law.   (ECF No. 43 at 5.) Plaintiff's Amended Complaint ignores the direction provided by the Court, alleging repeatedly as the basis for her claims that the Defendants purportedly caused her to ***voluntarily*** waste time.  (Am Compl. at ¶¶ 64 (it "took much longer than 30 seconds" to enter the giveaway), 70 (she "spen[t] time following 62 unrelated accounts"), and 82 (she "lost her time in order to enter in the lottery).)  Under settled Eleventh Circuit law, these allegations do not suffice to state an injury-in-fact.

In *Salcedo*, 936 F.3d at 1167, 1171-72, the Eleventh Circuit concluded that allegations of "brief, inconsequential, annoyance" resulting from review of a text message and other "isolated, momentary, and ephemeral" harms emanating from that technical statutory violation are not concrete injuries and, thus, "***not a basis for invoking the jurisdiction of the federal courts***."[5] (Emphasis added). Other decisions from the Eleventh Circuit emphasize the point.  Likewise, in *Muransky*, the Court held that a statutory violation alone (printing a receipt without truncating personal information) was not a concrete injury. 979 F.3d at 931. It also held that wasted time "destroying or safeguarding his receipt" would

---

[5] Florida courts have applied *Salcedo* to dismiss cases where the alleged injury is time wasted from review of multiple text messages. *See Eldridge v. Pet Supermarket, Inc.*, 2020 WL 1475094, at *6 (S.D. Fla. Mar. 10, 2020) (no injury-in-fact where plaintiff received five text messages that wasted his time and depleted battery); *Fenwick v. Orthopedic Specialty Institute, PLLC*, 2020 WL 913321, at *4 (S.D. Fla. Feb. 4, 2020) (Strauss, M.J.) (recommending that "time spent investigating the sender" of three text messages did not establish a concrete injury for Article III standing).

not have been a concrete injury because "plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves.'" *Id.* (quotation omitted).

In *Grigorian v. FCA US LLC*, the Eleventh Circuit again held that wasted time was not "sufficiently concrete to constitute an injury in fact." 838 F. App'x 390, 394 (11th Cir. 2020). There, the plaintiff claimed she lost time, while "studying for the Florida bar exam," listening to a voicemail and then researching "how her information was obtained and why she was being called." *Id.* at 393. She alleged no other harm or loss.[6] Thus, Plaintiff's bare allegations of wasted time, voluntarily expended so she could potentially win a free prize, do not establish a concrete injury.

>    **2.    Plaintiff's other amended allegations offer conclusory assertions that the Eleventh Circuit has expressly deemed insufficient to constitute an Article III injury.**

The Eleventh Circuit has expressly held that, although allegations of injury-in-fact may be general, they must be ***factual***, and they must be ***plausible***:

>   At the pleading stage of a case, general factual allegations of injury can suffice.   But that is not a free pass—these general factual allegations ***must plausibly and clearly allege a concrete injury***.   Mere conclusory statements do not suffice. . . . ***We will not imagine or piece together an injury sufficient to give a plaintiff standing when it has demonstrated none***, and we are powerless to create jurisdiction by embellishing a deficient allegation of injury.

*Muransky*, 979 F. 3d at 924-25 (citations and quotations omitted) (emphasis

---

[6] Plaintiff's only reference to "emotional anguish" is a lone conclusory allegation in her negligent misrepresentation claim that is unsupported by any plausible factual allegations.  This is plainly insufficient under *Muransky*, 979 F.3d at 924-25 (a plaintiff cannot prove standing with conclusory allegations).

added).  Plaintiff's new allegations plainly fail under this standard.

Plaintiff's Amended Complaint first adds a conclusory allegation that, by voluntarily following the alleged Instagram accounts, she gave them and Defendants "access to her data." (*Id.* at ¶ 65.)  But there is no allegation of what data she allegedly gave them, no allegation that this was nonpublic data (Instagram is, of course, a public platform), no allegation that Plaintiff *involuntarily* gave access to that data—to the contrary, she expressly alleges that she *voluntarily* followed these accounts—and no allegation that any of her data was actually accessed.  These allegations of the purported "risk" that her data was accessed are plainly too speculative to confer standing.  *See Valley Nat'l Bank*, 2021 WL 159760, at *4 (dismissing claim for lack of standing where it was "based on a chain of contingencies that relies on speculation and assumptions to come to fruition") (quotations and citations omitted).

Plaintiff's other allegations are similarly implausible and lacking in any factual support.  Plaintiff claims that "[r]ight after" she played in Defendants' free giveaway, she began receiving unwanted messages on her Instagram feed from the accounts that she voluntarily continued to follow.  (Am. Compl. at ¶¶ 65-67.)  But Plaintiff does not and cannot allege that she suffered any concrete and particularized ***injury*** from receiving messages on an Instagram platform that she voluntarily uses from accounts she voluntarily follows.  And Plaintiff wholly fails to draw any link between the mere receipt of an unwanted message on a public

social media platform and ***any conduct by Defendants***.[7]  Article III standing demands that Plaintiff demonstrate this link.  *See Muransky*, 979 F.3d at 924 ("For a party to have standing to bring a lawsuit, it must have (1) suffered an injury in fact, (2) ***that is fairly traceable to the challenged conduct of the defendant***, and (3) that is likely be to redressed by a favorable judicial decision") (citations and quotations omitted) (emphasis added).

The Eleventh Circuit's requirement that Plaintiff plausibly and clearly allege a concrete injury is plainly not satisfied by her conclusory claim that her Instagram feed was briefly "invaded" by accounts she was *voluntarily* following when she *voluntarily* signed in to an Instagram platform that she *voluntarily* joined. Indeed, her claim is virtually unprecedented, except for the fact that she is also trying to bring the same claim in state court.[8]  But she should not be permitted to invoke federal jurisdiction (after petitioning the federal court to proceed *in forma pauperis*, which she has not done in her other matter where she is pursuing foreign service against one of the defendants) based on her voluntary participation on a social media platform to earn money in a free giveaway.

Plaintiff's allegations independently fail because, even if they had been

---

[7]  In fact, she does not even allege she ever followed Defendants' Instagram account, and, in any event, alleges she knew she would receive content from those accounts she followed.  (*Id.* at ¶ 7.)

[8] As noted *supra* at 1-2 and n.1, Plaintiff has filed at least one other nearly-identical lawsuit against another company that was offering a free giveaway that she entered into during the same month alleged here.  In other words, Plaintiff is pursuing copycat class actions because, according to her own allegations, she played in a ***free*** giveaway that caused her to receive unwanted messages, after which she then played in another ***free*** giveaway.

pleaded with factual detail, they still would not allege the violation of any cognizable legal right under recent Supreme Court guidance. *See TransUnion*, 141 S. Ct. at 2203, 2206 (claims cannot proceed if plaintiff "has not suffered ... cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts" caused by defendants); *Uzuegbunam*, 141 S. Ct. at 802 (plaintiff must allege "a completed violation of a legal right"). Florida courts in the last few months have consistently applied this precedent to demonstrate claims where, like here, no violation of a legal right was or could be alleged.

For example, in *Mgmt. Properties, LLC*, 2021 WL 1530889, at *6, Judge Covington found that plaintiff had not alleged an injury because it had not alleged "any facts ... connect[ing] its nominal damages ... to a completed violation of a legal right" based on the statutory violation. There, plaintiff claimed injury in part because data generated by third party platforms based on information voluntarily provided to that platform by plaintiff, among others, was shared with third parties. The court concluded that plaintiff could not articulate a recognized injury from "platforms sharing such generic, aggregated data" voluntarily provided. *Id.*

Similarly, in *Valley National Bank*, 2021 WL 1597960, at *4, Judge Mizelle held that Valley National "likely cannot satisfy the injury in fact requirement of an 'invasion of a legally protected interest' to establish Article III standing." The court noted that Valley National "purports to vindicate the public harm of an unfair bankruptcy proceeding ... and not a private right" and, thus, found that "[w]ithout a duty owed, Valley National finds itself without an injury." Likewise, Plaintiff here

12

alleges no duty owed or no violation of any legal right—Plaintiff is alleging a purported harm based entirely on her participation in a voluntary, *free* giveaway where she was contacted after voluntarily following other accounts during her voluntarily use of the Instagram platform.  Like in *Valley National Bank*, Plaintiff fails to identify any "actual injury."  *Id.* at *3.[9]

## II.  PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Plaintiff's claims can also be dismissed because Plaintiff fails to plead any of her claims with the facts required under the Federal Rules of Civil Procedure.

### A.  Legal Standard

A claim should be dismissed under Rule 12(b)(6) if, accepting the well-pleaded allegations as true, a plaintiff is unable to state enough facts to establish that it is plausible the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Twombly*, 550 U.S. at 556-57. Thus, naked allegations without factual

---

[9] Plaintiff's claim-specific allegations of injury fare no better. In Count I, Plaintiff does not allege any injury at all arising from purported violations of section 849.094, Florida Statutes. (Am. Compl. at ¶¶ 90-93.) Moreover, Plaintiff has pursued claims under section 772.104 and FDUTPA, which require Plaintiff to plead actual injuries, alleging only entitlement to minimum damages for the former and "a loss" for the latter. (*Id.* at ¶¶ 97, 115.); *see Meridian Tr. Co. v. Batista*, 2018 WL 4760277, at *4 (S.D. Fla. Sept. 30, 2018) (the "connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect"); *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824 (Fla 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim."); *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) (dismissing claim for failure to plead actual damages). The common law claims fail because Plaintiff again alleges that she "continue[s] to suffer injuries as a result of Defendants' behaviors" and adds only conclusory allegations of lost time and emotional anguish to her misrepresentation claim. (Am. Compl. at ¶¶ 100, 107.)

enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A plaintiff must "include factual allegations for each essential element." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).

Federal Rule of Civil Procedure 9(b) applies to claims that sound in fraud, and provides that "the circumstances constituting fraud . . . shall be stated with particularity."  Plaintiff's claims for negligent misrepresentation and FDUTPA both sound in fraud. (Am. Compl. at ¶¶ 21, 46, 80, 82 (alleging fraud)).)

## B.   Plaintiff has failed to state a claim for Defendants' purported operation of illegal Florida lotteries.

### 1.   Section 849.094 is a criminal statute with no private cause of action.

Count I purports to state a claim under section 849.094, Florida Statutes, a criminal statute titled, "Game promotion in connection with sale of consumer products or services."  It does not provide a private cause of action and Plaintiff cannot state a civil claim under the Civil Remedies for Criminal Practices Act, sections 772.101, *et seq.*, because it is not a "criminal activity" under section 772.103, Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO"). Further, as argued *infra*, Plaintiff does not allege facts to establish a violation of section 894.094 as a predicate act for her FDUTPA claim.

### 2.   Section 772.104 requires Plaintiff to allege, *inter alia*, a pattern of criminal activity and actual injury.

In Count II, Plaintiff purports to state a claim under section 849.09, which makes it a crime to "set up, promote, or conduct any lottery for money or for

anything of value." Fla. Stat. § 849.09. It does not provide a private cause of action. Thus, any civil claim for violations of section 849.09 must be pursued under sections 772.101-104, Florida Statutes. Section 772.104 provides civil remedies for a plaintiff who proves by clear and convincing evidence a violation of section 772.103, Florida' RICO. Section 772.103(1) provides that is unlawful for any person "[w]ho has ***with criminal intent*** received any proceeds derived ... from a ***pattern of criminal activity*** ... to use or invest ... any part of such proceeds ... in the ***establishment or operation of any enterprise.*** *Id.* (emphasis added.)

"Criminal activity" means to commit or to attempt to, conspire to, or solicit another to commit certain expressly identified crimes, such as section 849.09. Fla. Stat. § 772.102(1)(a)31."Pattern of criminal activity" means "engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that ... are interrelated by distinguishing characteristics and are not isolated incidents." Fla. Stat. § 772.102(4). An "Enterprise" "means any individual, ... corporation, or other legal entity, or any ... group of individuals associated in fact." Fla. Stat. § 772.102(3).

Florida's RICO act requires allegations of "ongoing criminal behavior" that are similar and interrelated.[10] *See Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*, 2017 WL 4310754, at *17 (S.D. Fla. Sept. 28, 2017).  Where crimes are not alleged to be ongoing, "[p]redicate acts extending over a few weeks or months and

---

[10] "Florida looks to federal authority regarding the interpretation and application of its [RICO] act." *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So. 2d 565, 570 (Fla. 3d DCA 2004).

threatening no future criminal conduct do not satisfy this requirement." *Id.* Moreover, an individual defendant, or the same person referred to by a different name, is not an "enterprise." *See Palmas Y Bambu, S.A.*, 881 So. 2d at 565.

Finally, plaintiff must show an actual injury directly caused by the RICO violation. *See Meridian Tr. Co.*, 2018 WL 4760277, at *4 (the "connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect"); *Bortell*, 2 So. 3d at 1047 ("Indirect harm is insufficient").

### a. Plaintiff has failed to allege the elements necessary for a claim under section 772.104.

Plaintiff's claim for operation of illegal lotteries should be dismissed for at least four reasons. **First**, Plaintiff has not sufficiently pleaded a civil claim under section 772.103 because she does not allege Defendants acted with criminal intent. Failure to plead criminal intent is fatal to such claims.[11] *See, e.g.*, quoting *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 502 (Fla. 3d DCA 1994) (directing trial court to dismiss complaint because plaintiff did not allege criminal intent); *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 2005 WL 8166086, at *5 (S.D. Fla. Feb. 7, 2005) (failure to allege criminal intent is fatal).

**Second**, Plaintiff does not sufficiently plead any facts showing a "pattern" of ongoing or related criminal activity. She merely alleges that she participated in one lottery "on or about April 2020" (Am. Compl. at ¶ 61) and concludes Defendants "run illegal lotteries" and do so "on a recurring basis." (*Id.* at ¶¶ 21

---

[11] *See also Signeo Int'l Ltd. v. Wade*, 2013 WL 12153590, at *6 (M.D. Fla. Apr. 1, 2013) (failure to identify which subsection of section 772.103 is alleged warrants dismissal).

("run illegal lotteries"), 60 ("running her illegal lotteries on a recurring basis"), 95 ("organizing lotteries"), 96 ("organizing the lotteries on a recurring basis, at least twice a month in a well-established and predictable pattern").) These conclusory allegations are insufficient. *See Ginsberg*, 645 So. 2d at 501 (holding conclusive allegations of continuity lacking factual allegations were insufficient); *see Ferrell v. Durbin*, 311 F. App'x 253, 256 n.6 (11th Cir. 2009) (affirming dismissal due to "scant allegations" of predicate acts committed over limited time frame).[12]

**Third**, Plaintiff does not plead that proceeds derived from the criminal activity were used in the establishment or operation of any enterprise. Defendants are alleged to be one and the same and Plaintiff does not identify any individuals as associates or employees. Thus, Defendants are not alleged to be and cannot be an "enterprise." *See Palmas Y Bambu, S.A.*, 881 So. 2d at 575 (noting company and personnel "do not form an enterprise" under RICO where they "associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation") (quotation omitted).

---

[12] Plaintiff's other allegations of related criminal activity are similarly threadbare and, thus, insufficient: (1) method of commission (*i.e.*, Defendants "advise 'influencers' to … tell outright lies," "ask[] users to like a plethora of unrelated accounts," and "advertise these games of chance mainly via Instagram Stories" (Am. Compl. at ¶¶ 21, 22, 74)); (2) results (*i.e.*, "Plaintiffs are not winning anything," but alleging at least one winner (*id.* at ¶¶ 26, 76)); (3) accomplices (*i.e.*, identifying "influencers" who have promoted lotteries without details about their involvement or lotteries in which they participated (*id.* at ¶¶ 47, 57, 62, 63, 72), and referring to "influencers" generally (*id.* at ¶¶ 47 ("and many more" influencers), 57 ("few influencers"), and 74 ("'influencers' advertise these games of chance")); and (4) victims (*i.e.*, "Instagram users," "thousands of similar situated individuals," and all followers of @jbsocialcollective because, "upon belief," they are "only following it because they were participants in one of her lotteries" (*id.* at ¶¶, 21, 24, 79)).

**Fourth**, as argued *supra*, Plaintiff does not plead any specific injury or harm proximately caused by the alleged pattern of illegal lotteries. This is fatal to Plaintiff's claim, not only because Plaintiff cannot demonstrate standing, but because Plaintiff has not alleged an injury, a requirement to recover minimum damages. *See Meridian Tr. Co.*, 17-23051, 2018 WL 4760277, at *4 (failure to allege specific conduct that caused injury is fatal); *Bortell*, 2 So. 3d at 1047 (affirming dismissal where plaintiff did not allege RICO violation caused harm); Fla. Stat. § 772.104(1) (requiring proof "by clear and convincing evidence that he or she has been *injured*" to recover minimum damages) (emphasis added).[13]

### C. Plaintiff has failed to allege any detriment sufficient to state a claim for unjust enrichment or that she lacks an adequate remedy of law.

Plaintiff's unjust enrichment claim in this second pleading is ***identical*** to the first complaint. Thus, it should be dismissed for the same reasons argued in the Initial MTD and incorporated herein. (*See* Initial MTD at 16-18.) Namely, (1) she has not alleged that she lacks an adequate remedy at law and, to the contrary, has brought other claims at law based on the same alleged conduct (Am. Compl. at ¶¶ 99-103), (2) she has not alleged that she conferred a direct benefit on Defendants because Defendants were allegedly paid by influencers (*id.* at ¶ 73),

---

[13] Plaintiff also alleges conduct squarely within an exception to the statute – a nationally advertised drawing or game of chance. Fla. Stat. § 849.09; *see Ginsberg*, 645 So. 2d at 501 (Florida RICO inapplicable without criminal activity). Plaintiff alleges Defendants are located in California and operate "game[s] of chance" on a global platform of over 100 million users. (Am. Compl. at ¶¶ 4-6, 21, 33-34.)

and (3) she has not alleged facts showing an "inequitable result" because she has not alleged any harm, only that she "continue[s] to suffer injuries" (*id.* at ¶ 100).

### D.   Plaintiff has failed to adequately allege the elements of her negligent misrepresentation claim.

Plaintiff's second pleading adds one conclusory allegation to its negligent misrepresentation claim—"Plaintiffs promoted their illegal lotteries on Instagram, as bona fide 'giveaways.'" (Am. Compl. at ¶ 106.) Thus, as argued in the Initial MTD, Plaintiff still does not plead ***any*** facts supporting this claim other than her allegation by implication that the "giveaway" was not a bona fide one. (Initial MTD at 19.) Moreover, as argued *supra*, Plaintiff does not allege that she was injured due to her purported reliance on any misrepresentation or omission. Plaintiff's misrepresentation claim requires her to "plead some injury" resulting from acting in justifiable reliance upon Defendants' misrepresentation. *Prohais*, 485 F. Supp. 2d at 1334 (dismissing negligent misrepresentation claim).

### E.   Plaintiff has failed to allege a claim under FDUTPA.

Under Florida law, plaintiffs alleging a FDUTPA violation must allege and prove a deceptive or unfair practice, causation, and actual damages. *See Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, at *6 (M.D. Fla. Dec. 22, 2009). The remedies available to claimants under FDUTPA are set forth in § 501.211. FDUTPA provides that "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211(1). Moreover, "[i]n any action brought by a person who has

suffered a loss as a result of a violation of this part, such person shall recover **_actual_** damages, plus attorney's fees and court costs as provided in Section 501.2105." Fla. Stat. § 501.211(2) (emphasis added).

Plaintiff's FDUTPA claim should be dismissed for several reasons. First, as argued *supra* at 11-12, Plaintiff's claim sounds in fraud and must be pleaded with particularity under Rule 9(b). Plaintiff fails to plead with particularity any deceptive conduct sufficient to demonstrate a deceptive or unfair practice. Indeed, Plaintiff fails to specifically identify any deceptive or fraudulent conduct relating to her participation in the giveaway.

**_Second_**, Plaintiff fails to adequately allege that Defendants engaged in any predicate act that would constitute a deceptive or unfair practice. Section 501.203(3)(c), Florida Statutes, states that a violation of any law "which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate deceptive or unfair practice for a FDUTPA claim. *Parr*, 2009 WL 5171770, at *6. The text of a statute also may expressly state that it is to serve as a FDUTPA predicate. *Id.* (citing *Feheley v. LAI Games Sales, Inc.*, 2009 WL 2474061 at *4 (S.D. Fla. Aug.11, 2009) (finding that Florida Statute § 849.15 fails to serve as *per se* FDUTPA predicate because it does not include express language to that effect).

Here, even if Plaintiff had adequately pleaded a violation of Section 849.09 of the Florida Statutes—which she did not—purported violations of section 849.09

are not expressly or impliedly *per se* violations of FDUTPA.[14] Plaintiff, as a result, alleges that Defendants' purported conduct constitutes a *per se* violation of 15 U.S.C. § 45(a), which Plaintiff alleges is a *per se* FDUTPA violation. (Am. Compl. at ¶¶ 109-111.). But her bare allegations and the text of 15 U.S.C. § 45(a) belie this claim, and her other allegations just trace FDUTPA's statutory requirements.[15] Courts routinely dismiss claims based on such conclusory allegations.[16]

**Third**, Plaintiff has failed to plead any actual damages. *See Dorestin*, 45 So. 3d at 824 ("Proof of actual damages is necessary to sustain a FDUTPA claim."); *Jovine*, 795 F. Supp. 2d at 1344 (dismissing claim for failure to plead actual damages); *Parr*, 2009 WL 5171770, at *8 (same). As discussed throughout this Motion, Plaintiff has not alleged any injury resulting from Defendants' purported conduct, and even the most generous reading of her pleadings shows that she thinks she was harmed by wasting time clicking "Follow" a bunch of times on

---

[14] Plaintiff's FDUTPA claim fails because she has not alleged a violation of section 849.09. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902 (11th Cir. 2020) (claim dismissed because plaintiff failed to state predicate claims). Moreover, section 849.09 facially prohibits **any** Florida lottery and, thus, does not impliedly seek to regulate deceptive or unfair practices because it does not expressly relate to such practices. *See Feheley*, 2009 WL 2474061, at *3 (gambling statute is not *per se* FDUTPA violation and noting "no Florida court has ever cited it as a FDUTPA predicate").

[15] In Count I, Plaintiff alleges the conclusion that "Defendants engaged in practices that are in violation of § 849.094, Fla. Stat." a *per se* FDUTPA violation. (Am. Compl. at ¶ 93.) But Plaintiff does not allege the statutory requirements to show a violation of section 849.094. *See* Fla. Stat. § 849.094(1) (lottery must be "in connection with and incidental to the sale of consumer products or services"); Fla. Stat. § 849.094(2)(a)-(e) (listing elements of an unlawful lottery); Fla. Stat. § 849.094(3)-(7) (listing other requirements).

[16] See, e.g., *HW Aviation LLC v. Royal Sons, LLC*, 2008 WL 4327296, at *6 (M.D. Fla. Sept. 17, 2008) (conclusory allegations insufficient under FDUTPA).

Instagram. Such an allegation clearly does not plead actual damages sufficient to support a FDUTPA claim.

For example, in *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204–05 (Fla. 1st DCA 2012), the First District affirmed the decision that a Plaintiff had no right to recover for a FDUTPA claim challenging hospital liens where the plaintiff suffered no "actual damages" as a result of the liens. He testified that he did not anticipate any financial gains from the lawsuit or "actual damages as a result of the imposition or payment of the lien," and the court thus found that he could not maintain a FDUTPA claim. *Id.* Likewise, in *City First Mortg. Corp. v. Barton*, the Fourth District rejected a borrower's FDUTPA claim where the borrower essentially argued that he had wasted time trying to refinance a loan based on a lender's misrepresentations. 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (FDUPTA does not provide for "compensation for subjective feelings of disappointment") (quoting *Butland*, 951 So. 2d at 873). Florida courts have ruled similarly in other cases where the plaintiff could not allege any tangible injury or out-of-pocket loss. *See Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *5 (S.D. Fla. Dec. 5, 2013) (because the plaintiff did not suffer any out-of-pocket lost for failure to disclose a car defect, she "did not suffer the loss of any value in the [car] that could constitute 'actual damages'").[17] Because Plaintiff suffered no actual damages resulting from Defendants' alleged conduct, she cannot state a FDUTPA claim.

---

[17] Plaintiff's request for statutory damages does not change this analysis. *See Plain Bay Sales, LLC v. Gallaher*, 2019 WL 3429137, at *5 (S.D. Fla. May 3, 2019) (bare allegations of violations of Florida Administrative Code were insufficient to state FDUTPA claim).

### III.   PLAINTIFF HAS NOT PLEADED A BASIS FOR PERSONAL OR VICARIOUS LIABILITY AGAINST MS. ENGELHARDT.

Defendants argued in the Initial MTD that Plaintiff's allegations violated the "fundamental principle of Anglo-American law that a business operating as a legally recognized entity is separate and distinct from its owners" by improperly commingling the Ms. Engelhardt with Engelhardt & Co. seemingly without rhyme or reason. (Initial MTD at 23-25 (citing *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1240 (S.D. Fla. 2015) (quoting 114 A. Jur. Proof of Facts 3d 403 (2015)).) Despite a second chance, Plaintiff did not alter her allegations. Plaintiff's claim against Ms. Engelhardt should be dismissed with prejudice.

To state a claim based on vicarious liability, a plaintiff must plead facts establishing either actual or apparent agency ***in addition to*** the elements of the underlying tort "for which the plaintiff seeks to hold the principal liable." *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1347-48 (S.D. Fla. 2018) (quoting *Goldschmidt v. Holman*, 571 So. 2d 422, 423 (Fla. 1990)). Florida law imposes the same requirements for a pleading that seeks to pierce the corporate veil or plead an alter ego theory. S*ee Omega Psi Phi Fraternity, Inc. v. HCE Group of Companies, Inc.*, 2011 WL 13228098, at *3 (S.D. Fla. Oct. 19, 2011) ("plaintiff seeking to pierce the corporate veil bears a very heavy burden" and dismissing claims against company owner).

Notwithstanding hornbook law, Plaintiff's sole allegation in support of her attempt to hold Ms. Engelhardt personally liable in this case remains that she is the "principal" of Engelhardt & Co. and "acting alone or in concert with others,

formulated, directed, controlled, had the authority to control, or participated in . . . the acts and practices set forth in this Complaint." (Am. Compl. at ¶ 35.)

Plaintiff's pleadings are procedurally and factually deficient to state a claim against Ms. Engelhardt for personal or vicarious liability. Indeed, Florida law requires that vicarious liability claims be pleaded as a separate cause of action. *Honig*, 339 F. Supp. 3d at 1347. At a minimum, each separate claim for relief must be pled in separate counts. *See S-Fer Int'l, Inc. v. Stonesheets, LLC*, 2016 WL 8808749, at *3 (S.D. Fla. July 22, 2016) (dismissing owner under alter ago theory). Plaintiff does not do this. Plaintiff still impossibly commingles the Defendants and the allegations against them throughout the Complaint. *See Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1323-24 (S.D. Fla. 2018) (dismissing in part "commingled claims for vicarious liability").

Plaintiff's claims against Ms. Engelhardt also fail because Plaintiff still does not allege ***any*** facts showing that Ms. Engelhardt either (1) can be held vicariously liable for the acts of Engelhardt & Co. or (2) can be held personally liable under an alter ego theory. The claims against Ms. Engelhardt should be dismissed. *See HCE Group*, 2011 WL 13228098, at *4 (dismissing claims against owner where owner is "shielded from personal liability absent circumstances warranting piercing the corporate veil"); *S-Fer Int'l*, 2016 WL 8808749, at *4 (conclusory allegations that owner controlled or dominated company are insufficient); *Honig*, 339 F. Supp. 3d at 1348 (dismissing claims against principal for lack of factual allegations); *Orginsky v. Paragon Props. of Costa Rico LLC*, 784 F. Supp. 2d 1353, 1373 (S.D.

Fla. 2011) (plaintiff failed to allege facts that owner "dominated and controlled" company); *Goldschmidt*, 571 F. So. 2d at 423 (requiring plaintiff to plead ultimate facts supporting vicarious liability claim).

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss this action with prejudice, award it its costs, and grant such other relief as may be deemed just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that, pursuant to Local Rule 3.01(g), I conferred with opposing counsel concerning the matters set forth in this Motion and Plaintiff opposes the relief sought herein.

Dated: July 20, 2021          Respectfully submitted,

**STUMPHAUZER  FOSLID  SLOMAN ROSS & KOLAYA, PLLC**
Two South Biscayne Boulevard, Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400
Facsimile: (305)614-1425

*/s/ Ian M. Ross*
IAN M. ROSS
Florida Bar No. 091214
iross@sfslaw.com
JORGE A. PEREZ SANTIAGO
Florida Bar No. 91915
jperezsantiago@sfslaw.com
electronicservice@sfslaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of July, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, causing a copy of the foregoing document to be served on all counsel of record via Notice of Electronic Filing.

*/s/ Ian M. Ross*
IAN M. ROSS

**<u>SERVICE LIST</u>**
***Colceriu v. Barbary, et al.***
**Case No. 8:20-cv-01425-MSS-AAS**
**United States District Court, Middle District of Florida**

**Bogdan Enica**
Bogdan Enica, Esq.
66 W. Flagler Street, Suite 900
Miami, FL 33130
786-588-4758
Email: b.enica@fashion.law

*Counsel for Plaintiff*