IN THE UNITED STATE DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

LIGIA COLCERIU, and those similarly situated,

    *Plaintiff*,

v.

JAMIE BARBARY a/k/a JAMIE ENGELHARDT, ENGELHARDT &CO. LLC.,

    *Defendants*.

_____/

CASE No. 20-CV-01425-MSS-AAS

## **DEFENDANTS' MOTION FOR RULE 11 SANCTIONS AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 11, Defendant Jamie Barbary a/k/a Jamie Engelhardt and Engelhardt & Co., LLC ("Defendants" or "Engelhardt") respectfully move for an award of sanctions against Plaintiff Ligia Colceriu ("Plaintiff" or "Colceriu"), and her counsel of record. Engelhardt attaches the two 21-day safe harbor letters Engelhardt served on Colceriu and her counsel hereto as **Exhibit 1**. Accordingly, Engelhardt submits the following memorandum of law.

### **INTRODUCTION**

Engelhardt seeks sanctions because Colceriu and her counsel knowingly filed an Amended Complaint containing materially false and frivolous allegations. Colceriu is a serial free "giveaway" contest participant who filed this and another nearly identical putative class action against unrelated third parties claiming that she is entitled to compensatory and punitive damages because she participated on

or around April 2020 in free "giveaway" contests on Instagram that she did not win. *Compare* ECF No. 44 to *Colceriu v. Influize, Ltd.*, Case No. 2021-CA-004981, Complaint (Fla. 15th Jud. Cir. Ct.), attached as **Exhibit 2**. In this instance, Colceriu claims that because she clicked "Follow" on 62 Instagram accounts and did not subsequently win a prize, the free "giveaway" was a "fraud" and an "illegal lottery." (Am. Compl. at ¶¶ 21, 57-60, 69, 106.) She claimed that Engelhardt purportedly made hundreds of thousands of dollars, or even millions, on these "pretend" giveaways. (*Id.* at ¶¶ 26, 57, 69, 80-82, 102-03.)

This Court has already once concluded that Colceriu's injury—not winning a free "giveaway" contest—is not an injury-in-fact sufficient to establish Article III standing necessary to sustain Plaintiff's claims. (ECF No. 43.) Instead of conceding defeat, Colceriu filed an Amended Complaint that doubles down on many of the same falsities Defendants already warned Colceriu were false. All five counts of the Amended Complaint are based on Plaintiff's false allegations that Engelhardt: (1) "convinced and paid or otherwise rewarded a few influencers to pretend to organize a lottery" (*id.* at ¶ 57, 69, 106); (2) is running "illegal lotteries" (*id.* at ¶ 21, 60, 106); (3) advised "influencers" to omit required information or "tell outright lies" (*id.* at ¶¶ 21, 58); and (4) has made hundreds of thousands or millions of dollars in these giveaways (*id.* at ¶¶ 26, 80-82, 102-03). And to try to plead around the Court's order dismissing Plaintiff's initial complaint for lack of Article III standing, Plaintiff has falsely and generically alleged that Engelhardt (i) "allow[ed] the Plaintiff's data to be used by anybody willing to pay the price," (ii) shared

2

Plaintiff's data with third parties, and (iii) caused Plaintiff's account to be "invaded" by advertisers and third-parties with "pornographic or quasi-pornographic, highly offensive, and unwanted content" (*id.* at ¶ 25, 27, 29, 65-67, 98). Plaintiff did not conduct any reasonable pre-filing investigation regarding these allegations and her and her counsel know that these allegations are false.

      Plaintiff and her counsel had reason to know then, and certainly know now that they have had the opportunity to take discovery in this case, that Engelhardt did not falsify the "giveaway" and its cash prizes. Engelhardt did not make any false representations about the "giveaway." Engelhardt did not withhold winnings of the "giveaway" for herself. And Plaintiff and her counsel have no reasonable basis to allege that Engelhardt or any third party accessed Plaintiff's data as a result of Colceriu following their accounts, Engelhardt shared Plaintiff's data with others, and that any "pornographic or quasi-pornographic content" or other unwanted content appearing on Colceriu's feed has **any** relationship to Engelhardt or Engelhardt's free "giveaway" contests—as opposed to unrelated third parties Colceriu follows or free "giveaway" contests Colceriu participated in around the same time. Plaintiff simply played in a "giveaway" that she did not win—that is the total injury that she allegedly incurred, and the sole basis for her outrageous class action claims against a small business owner.

      Indeed, on this front, Plaintiff's Amended Complaint also falsely alleged that Defendants run a multimillion-dollar scheme without any adequate basis and have continued to advance that narrative even though they know it is false. Plaintiff has

3

Engelhardt's tax returns, profit and loss statements, and Engelhardt's sworn testimony relating to those documents, and knows that the Amended Complaint's allegations regarding the amounts made and received by the Defendants are materially misstated and cannot be maintained in good faith. Plaintiff also knows from those documents and testimony that Engelhardt never falsified the giveaways or kept prizes or prize money for herself.

For these reasons and those set forth below, this Court should issue Rule 11 sanctions against Colceriu's counsel in the form of dismissing Colceriu's complaint with prejudice, awarding Engelhardt her reasonable attorneys' fees and costs to defend against this litigation and bring this motion, and awarding such further relief as the Court deems just and necessary.

## **STANDARD OF REVIEW**

The central purpose of Rule 11 is to "deter baseless filings in district court." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (*citing Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990)). The Rule provides that when an attorney affixes his name as counsel to a pleading filed with the court, that attorney certifies that, to the best of his knowledge and belief "formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).

Rule 11 imposes on an attorney who signs a pleading "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). The Rule thus

"stresses the need for some prefiling inquiry." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992). Rule 11 sanctions are proper, among other occasions, when a party files a pleading that has "no reasonable factual basis," and when an attorney pursues claims that have "no reasonable chance of success." *Hodges v. Publix Super Mkrts., Inc.*, 372 F.App'x 74, 78 (11th Cir. 2010).

The Eleventh Circuit applies a two-step analysis to determine whether a party's pleading satisfies Rule 11. *Thomas v. Early County*, 360 F. App'x 71, 75 (11th Cir. 2010). First, a court must determine whether the claims are objectively frivolous in view of the facts or law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). Second, if the claims are frivolous, a court must determine whether the lawyer who signed the pleading should have been aware they were frivolous—that is, whether counsel would have been aware of the pleading's defect upon making a reasonable inquiry. *Id.* "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995); *see also Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 682 (S.D. Fla. 2009) ("[I]f, after dismissing a party's claim as baseless, the court finds that the party's attorney failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound."). For the reasons set forth below, this Court should sanction Colceriu pursuant to Rule 11.

## **ARGUMENT**

The false allegations set forth above were not based on an adequate investigation and Plaintiff has continued to advance those claims even though she now knows that they are utter falsities. Because Plaintiff filed these false allegations without investigating them adequately, and then knowingly proceeded with a lawsuit where the fundamental premises behind her case are false, this Court should issue Rule 11 sanctions. *See, e.g.*, *Muraoka v. American Osteopathic Assoc.*, 117 F.R.D. 616, 618-619 (N.D. Ill. 1987) ("After six months of discovery, however, Muraoka's attorneys learned that Muraoka in fact did not have standing to sue . . . One cost of a lawsuit is the research to ascertain the facts and review the law. . . . Muraoka's attorneys did not adequately meet the duty and obligations of Rule 11. Given the lack of adequate prefiling investigation by Muraoka's attorneys of the factual basis of the claim filed, we find that sanctions are required in this case."); *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) ("As the court pointed out, however, the contingencies in the written contract were never fulfilled and therefore the transaction did not take place. . . . Fabriko continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out to it. That conduct warranted Rule 11 sanctions."); *Allen v. Utley*, 129 F.R.D. 1, 5 (D.D.C. 1990) ("An examination of the signature cards would have revealed that ASB's dishonor was not wrongful. Thus, the plaintiff's failure to conduct a reasonable pre-filing inquiry and the subsequent filing of papers continuing to press a claim which a reasonable attorney

6

by that point should have recognized was without factual and legal foundation require that the Court impose Rule 11 sanctions.").

Plaintiff should also be sanctioned for filing and pursuing frivolous claims for which she does not have Article III standing. In fact, the Supreme Court in *Spokeo* held that a plaintiff cannot state a claim in federal court unless she clearly alleges facts showing that she "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Pleading an "[i]njury in fact is a constitutional requirement." *Id*. A plaintiff thus must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). Here, Plaintiff has pleaded nothing other than that she participated in but did not win a free giveaway one day by clicking "Follow" on other Instagram profiles. She has not pleaded **any** injury or loss suffered by these clicks, let alone a concrete and particularized injury-in-fact. In fact, the Court already found that allegations of a "mere waste of time, voluntarily expended," are insufficient in the Eleventh Circuit and that Plaintiff had not alleged she "suffered an injury related to an 'invasion' of her social media feed by the profiles she followed." (ECF No. 43 at 5.)

But, in a last ditch effort to avoid dismissal, Plaintiff's amended pleading doubles down on her false allegations, adding more baseless and unsupported accusations and claims to try to manufacture an injury sufficient to establish Article III standing to pursue her claims. So, without any prefiling investigation or

7

reasonable factual basis to do so, Plaintiff falsely and generically alleges that Engelhardt "allows the Plaintiff's data to be used by anybody willing to pay the price," shares Plaintiff's data without her knowledge or consent, and caused Plaintiff's account to be "invaded" by advertisers and third-parties with "pornographic or quasi-pornographic, highly offensive, and unwanted content" (Am. Compl. at ¶ 25, 27, 29, 65-67, 98). But Plaintiff does not allege how her voluntary act of following third party accounts on Instagram allowed Engelhardt to access and then share her data with advertisers and third parties, and how any of this supposed "highly offensive content" that invaded her feed is a concrete injury that bears any relationship to Engelhardt. And, importantly, she still does not allege any injury relating to her act of voluntarily following third party social media accounts—she alleges injuries of wasted time and generic emotional anguish because, ultimately, she did not win a prize. (*Id.* at ¶¶ 70 (she "spen[t] time following 62 unrelated accounts"), 82 (she "lost her time in order to enter in the lottery, … constantly look for the winner … [and] "to try to unfollow some of the accounts"), and 107 ("members of the class suffered injuries, including … loss of time and emotional anguish"). This Court already acknowledged this is not enough to pursue her claims. (ECF No. 43 at 5-6.)

Moreover, Plaintiff has pursued statutory claims under Florida's RICO statute and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") even though she knows she has not suffered any actual injury or damages. It is well settled that both statutes require Plaintiff to plead actual injuries. *See Meridian Tr.*

8

*Co. v. Batista*, 17-23051, 2018 WL 4760277, at \*4 (S.D. Fla. Sept. 30, 2018) (the "connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect"); *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009) ("Indirect harm is insufficient"); *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824 (Fla 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim."); *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) (dismissing claim for failure to plead actual damages). In any event, the Supreme Court has emphasized that pleading entitlement to minimal or statutory damages, without more, is insufficient. *See, e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (holding that request for nominal damages does not "guarantee[] entry to court.... It remains for the plaintiff to establish the other elements of standing (such as a particularized injury); plead a cognizable cause of action, ... and meet all other relevant requirements.")

Plaintiff has also brought a statutory claim under section 849.094, Florida Statutes, a criminal statute with no private cause of action. Notwithstanding the lack of a private cause of action under this statute, Plaintiff did not even bother alleging an injury of any kind due to the alleged operation of "lotteries in violation of § 849.094, Fla. Stat." (*See* Am. Compl. at ¶¶ 90-93.)

Finally, Plaintiff's unjust enrichment and negligent misrepresentation claims suffer from the same deficiencies as the initial complaint. Plaintiff still alleges only that she "continue[s] to suffer injuries as a result of Defendants'

9

behaviors" and lost time and suffered, without factual support, emotional anguish. (Am. Compl. at ¶¶ 100, 107.) "Plaintiff cannot satisfy her burden to prove standing by merely … intoning the word 'injury.' " (ECF No. 43 at 6.)

Plaintiff's pursuit of claims notwithstanding her lack of any injury-in-fact or actual damages even after she was put on notice of those shortcomings is an additional basis for sanctions to be imposed. *See Fabriko Acquisition Corp.*, 536 F.3d at 610 ("continu[ing] to advocate a claim that had no legal basis and refus[ing] to alter or withdraw it when that deficiency was pointed out to it" warrants Rule 11 sanctions"); *Allen*, 129 F.R.D. at 5 ("An examination of the signature cards would have revealed that ASB's dishonor was not wrongful. Thus, the plaintiff's failure to conduct a reasonable pre-filing inquiry and the subsequent filing of papers continuing to press a claim which a reasonable attorney by that point should have recognized was without factual and legal foundation require that the Court impose Rule 11 sanctions."); *S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370, 403 (D.N.J. 2007) (Rule 11 sanctions were warranted because counsel's failure to obtain or examine information and documents before making claims based on the information and documents was "not objectively reasonable").

## **CONCLUSION**

Wherefore, for the foregoing reasons, Engelhardt respectfully asks this Court to grant this motion and issue Rule 11 sanctions against Colceriu in the form of dismissing Colceriu's complaint with prejudice, awarding Engelhardt her reasonable attorneys' fees and costs to defend against this litigation and bring this

motion, and awarding such further relief as this Court deems just and necessary.

## Local Rule 3.01(g) Certification

I hereby certify that pursuant to Fed. R. Civ. P. 11(c)(2) counsel for Defendants served Plaintiff on July 8, 2021 with a 21-day safe harbor letter raising these issues, and previously served Plaintiff on April 30, 2021 with a 21-day safe harbor letter regarding Plaintiff's nearly identical prior pleading, and that Plaintiff opposes the relief sought herein.

Dated: July 30, 2021            Respectfully Submitted,

**STUMPHAUZER FOSLID SLOMAN ROSS & KOLAYA, PLLC**
Two South Biscayne Boulevard,
Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425

By: /s/ *Ian M. Ross*
IAN M. ROSS
Florida Bar No. 091214
iross@sfslaw.com
JORGE A. PEREZ SANTIAGO
Florida Bar No. 91915
jperezsantiago@sfslaw.com
electronicservice@sfslaw.com

*Counsel for Jamie Barbary a/k/a Jamie Engelhardt and Engelhardt & Co. LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2021, that the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, causing a true and correct copy to be served on counsel of record identified below via a Notice of Electronic Filing.

/s/ *Ian M. Ross*
IAN M. ROSS

**SERVICE LIST**
*Colceriu v. Barbary, et al.*
**Case No. 8:20-cv-01425-MSS-AAS**
**United States District Court, Middle District of Florida**

**Bogdan Enica**
Bogdan Enica, Esq.
66 W. Flagler Street, Suite 900
Miami, FL 33130
786-588-4758
Email: b.enica@fashion.law

*Counsel for Plaintiff*