UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIGIA COLCERIU, and those
similarly situated,

Plaintiffs,                                  CASE NO: 8:20-cv-1425-T-35AAS

v.

JAMIE BARBARY and
ENGELHARDT & CO. LLC,
Defendants.

RESPONSE TO DEFENDANTS'
MOTION FOR LEAVE TO FILE UNDER SEAL

Plaintiff, LIGIA COLCERIU, by and through her undersigned counsel hereby files her Response to Defendants' Motion to Leave to File Under Seal [ECF #55] ("Motion"), in support thereof, states as follows:

GENERAL STATEMENTS

Disguised as a motion to leave to file under seal, the Motion is effectively a reply to Plaintiff's Response in Opposition to Defendants' Motion for Rule 11 Sanctions [ECF #52] ("Response"). The Motion was filed without leave of court, in violation of Local Rule 3.01(d).

The Motion is confusing as to the actual purpose and the relief requested. Instead of focusing their attention to the exhibits to be sealed, the Defendants make

full-fledged and poorly reasoned arguments regarding statements in the Response. The Court should disregard the arguments and deny Defendants' Motion. To the extent the Court decides to review the arguments presented in the Motion, Plaintiff would like to bring some light and clarify the facts by filing this response.

Regarding the relief requested, the Motion states that Defendants would like to seal "Exhibits 1 through 8" (Motion pg.1), "Exhibits 1-8" (Motion pg.4), and "its confidential documents" (Motion pg.8). While Exhibit 8 was designated as "Confidential," a reading of the Motion indicates no explanation as to why Exhibit 8 should be sealed. Also, the docket text only indicates Exhibits 1 to 7.

Furthermore, in their Rule 3.01(g) statement the Defendants state that they conferred regarding sealing the exhibits. However, the conferral statement is only correct as for Exhibits 1-7, not for Exhibit 8. See attached email from Jorge A. Pérez Santiago, attorney for the Defendants, regarding removing Exhibit 8 from the Motion. (Exhibit "A").

The Defendants also failed to comply with Local Rule 11(c)(1) as the description of the items proposed for sealing is fairly vague.

## ARGUMENT AND MEMORANDUM OF LAW

By continuing to make their argument, the Defendants keep reiterating that the claims in this case are about "clicking a button 62 times," without any relevancy to sealing the exhibits.

As previously mentioned in Plaintiff's briefing, a "click" is not just a result of depressing the mouse button or a tap of a screen, it is much more than that. What is far more important is the process by which a person makes the decision to "click" and the results of that "click." (Response to Motion to Dismiss [ECF#27] pg.2).

In their Motion, the Defendants argue again that Colceriu claims "she clicked "Follow" on 62 Instagram accounts and did not subsequently win a prize. (Am. Compl. at ¶¶ 21, 57-60, 69, 106.)." In fact, this is not the claim. The word "clicked" is only used once in the Amended Complaint [ECF #44] ("Am. Compl."), only to emphasize that every time the Plaintiff clicked "follow" the Defendants became richer. (Am. Compl. ¶69). The other paragraphs cited are not claiming anything closer to the fact that "she clicked follow 62 times and did not win a prize."  It is the context surrounding the "clicking," the time spent before and after the "clicking," and the aftermath of the "clicks" it that injured the Plaintiff in this case.

As a classic example of Defendant's craftmanship of mixing existing facts with misinformation and misrepresentations, the Defendants state:

> Plaintiff further misstates Engelhardt's financial records to claim its net profits are "just shy of one million" and unjustifiably leaps to the conclusion that Engelhardt "forced [influencers] to lie" about charitable contributions because Engelhardt may have *underreported* its 2020 charitable contributions.

Motion pp. 2-3.

This is, again, just one example showing the true nature of Defendants'

3

Motion and the deference they show to the Local Rules. And, there are so many things that are wrong with this paragraph alone:

**First**, the Response states that: "According to their own admissions, defendant Engelhardt LLC made over (placeholder), mostly from organizing illegal lotteries." *See* Exhibit 3. The amount qualifies as hundreds of thousands and it is just shy of one million." Nowhere in this sentence, or in the entire Response the term "net profit" appears. The term "net profit" does not appear in the Complaint either, and it is just a red herring introduced by the Defendants in order to mislead the Court.

**Second**, while the Motion asserts that the Response "misstates" the financial records as a reason to seal them, there is no specific explanation on how the Plaintiff misstates the record by simply citing a number in its Response. If anything, the records should be public if the Defendants believe that the amounts were in any kind "misstated."

**Third**, the Defendants introduce a new theory and argue that they "*underreported*" their financial contributions. (emphasis in original). This goes against their own arguments in the Rule 11 Motion for Sanctions [EFC# 49] ("Rule 11 Motion") where the fact that "Plaintiff has Engelhardt's tax returns, profit and loss statements, and Engelhardt's sworn testimony relating to those documents," was cited as the main reason to have this case dismissed. (Rule 11 Motion pg.3). In other words, the Plaintiff should, somehow, dismiss this case because she had access to

4

information that now we know *it is not accurate* as it was "underreported."

During her deposition, Jamie Barbary, on behalf of Engelhardt LLC, testified under oath and reaffirmed her testimony, that the amounts contained in the financial statements are fully accurate and that **all** the amounts transacted by Engelhardt LLC are included in the financial statements provided. Even if Jamie Barbary proved not be a credible witness, the Defendants are, nevertheless, contradicting themselves again.

Assuming that the Defendants did not lie and not forced the influencers to lie, and assuming that the contribution amount was indeed much higher, a basic principle of accounting states that the revenue should match the expenses. Therefore, underreporting expenses means that the revenue was most likely underreported, which in turn invalidates most of the financial data received in discovery so far.

**Fourth**, the paragraph above also states that the Response "[…] further misstates Engelhardt's financial records unjustifiably *leaps to the conclusion* that Engelhardt "forced [influencers] to lie." In fact, the Defendants are reading the Response backwards, as the statements and explanation about the "lies" are at pages 6-7 of the Response and the statement about the revenue as at page 8 of the documents. So, the Response does not "leap" to a conclusion but rather carefully gives only one example on how Engelhardt forced the influencers to lie, prior to analyzing the financial issues. And the example presented in the Response is clear:

with one exception, no charitable contributions were made, while the influencers, week after week, promised that thousands of dollars will be spent to support charitable causes.

Another important issue for the Court to consider when ruling on the Motion is the position of the "influencers" advertising these lotteries in this litigation. The Motion calls them "innocent third parties," but they are nothing of sort. The influencers are not only important witnesses in this lawsuit but also joint tortfeasors and potential co-defendants. It is the influencers who did not disclose the fact that they are paid, in violation of the FTC rules; and it is the influencers who advertised the illegal lotteries. (Am. Compl. ¶¶20,47,63). Under the Florida law, both organizing and promoting lotteries are treated equally, therefore, these influencers-promoters are not "innocent" third parties but potential defendants in this lawsuit. See § 849.094, Fla. Stat., including both promoters and operators. *See also* Fla. Admin. Code R. 5J-14.003.

Also, most of the exhibits proposed for sealing include the correspondence between the Defendants and one influencer, without disclosing much data that cannot be found on the public domain.

Exhibit 8, for example, consists of a message exchange between one Florida-based influencer and Jamie Barbary. It has only 109 words and includes the statements that the Florida-based influencer posted on her public Instagram profile

moments thereafter.

Most of the cases cited by the Defendants deal with financial information, not with emails or Instagram messages exchanged with potential co-defendants, especially when none of the parties indicated any interest in confidentiality at the time the email/message was sent or received.

Exhibit 2 is a message sent by a third-party mentioning the name and the email address of one of the influencers that advertised the lotteries. There is nothing private or proprietary in that Exhibit, except the fact that the writer asks that the influencer is paid by PayPal using the "friends and family" option, which, if made public, may result in a possible negative impact on their PayPal account (since they are advising the reader to violate the platform's terms and conditions). There is no indication in the message that the sender intended the message to be confidential or exempt from disclosure.

The Defendants argue that the Exhibits provide the contact information of innocent third-party "influencers," while the only information provided is their Instagram handle and email address. No physical address, fax number, personal cell phone or home phone numbers are provided in any of the Exhibits.

It is dishonest, however, to state that an email address or Instagram handle deserve protection from disclosure because it belongs of one influencer while the Plaintiff incurred no damage as a result of her Instagram handle being "sold" for a

profit by the Defendants. If the Defendants believe that receiving hundreds or thousands of messages from advertisers (Am. Compl. ¶27) presents no injury, they should not be concerned with disclosing influencers' email addresses.

## CONCLUSION

Plaintiff requests this Court denies Defendants' Motion for Leave. To the extent the Court finds merit in the Defendants' argument, the Plaintiff request that, at a minimum, Exhibit 2 and Exhibit 8 are not be filed under seal.

Plaintiff also requests that the arguments made by the Defendants in support of their Rule 11 Motion and their Motion to Dismiss, are not be considered by this Court.

Dated August 31, 2021.

    _s/Bogdan Enica_
Bogdan Enica, Esq.
Attorney for the Plaintiffs
66 W Flagler St. Ste.900, Miami FL 33130
Phone: 786-588-4758
E-mail: b.enica@fashion.law

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 31st day of August 2021, I have caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which sends notification of such filing to all counsel of record.

s/ *Bogdan Enica*
Bogdan Enica, Esq.
