UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIGIA COLCERIU,

    Plaintiff,

v.                                                                                  Case No: 8:20-cv-1425-MSS-AAS

JAMIE BARBARY and
ENGELHART & CO., LLC,

    Defendants.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Dismiss Amended Complaint, (Dkt. 47), and Plaintiff's response in opposition thereto, (Dkt. 51); and Plaintiff's Motion for Leave to File Second Amended Complaint, (Dkt. 60), and Defendants' response in opposition thereto. (Dkt. 62) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint.

The Court previously dismissed the Complaint in this action with leave to amend, holding that Plaintiff failed to allege an injury in fact sufficient to support Article III standing. (Dkt. 43 at 6) The Court advised Plaintiff that to sustain this action she had to allege a legitimate basis for the exercise of this Court's subject-matter jurisdiction. (Id. at 5) She was specifically advised that mere waste of time, particularly voluntary waste of time, was insufficient to establish constitutional standing. (Id.) The

Court cited prevailing and precedential case authority concerning the requirements for establishing an injury in fact. (Id.)

With that clear directive, Plaintiff amended her Complaint, presumably, in an attempt to cure this fatal defect. (Dkt. 44) She has failed. Gleaning as much as it can from the allegations in the Amended Complaint, the Court recites the following as the "facts" that Plaintiff has pleaded to try to allege Article III standing:

> On or about April 2020, Colceriu saw that [a] few of the influencers she follows organized a "giveaway" with total cash prizes of US $9,000.
>
> In order to check if the lottery is legitimate, Colceriu visited Defendant's Instagram page and, from there, reviewed what she believed to be the honest opinion of various influencers promoting the lotteries.
>
> The named Plaintiff researched the profiles of all these influencers in order to decide and participate in the giveaway.
>
> All of the influencers Colceriu saw promoting these lotteries were stating that the "giveaways" are an easy way of getting some money, some of them even mentioning that it takes 30 seconds to enter. None of the influencers that Colceriu researched mentioned that they were paid to advertise the lottery.
>
> To participate in said game of chance, Colceriu was required to, and indeed did, follow all the profiles on the Defendants' list. All 62 of them. It took much longer than 30 seconds to follow all the accounts[.] Colceriu did it only to participate in defendant's lotteries, not because she found anything particularly of interest in those accounts.
>
> By following the 62 unrelated accounts, Colceriu provided the Defendants and the accounts she followed access to her data, and data is considered now one of the most important commodities.
>
> Right after following them, each of those accounts started to send unsolicited updates and advertising in Colceriu's Instagram feed. Since the rules of the lottery required that she follow of these accounts until the prize is awarded, Colceriu had no choice but see how her Instagram feed is taken over by strangers that she had no interest in.

2

> Colceriu was never contacted back with the results of the lottery and she never received any prize. Not only did Colceriu spend time following 62 unrelated accounts, she had to continue to parse through her feed and these accounts to determine who had won the lotter[y] [and] how and when the prize was awarded. To date, she has been unable to find out who won these lotteries.
>
> As a result of participation in the Defendants' "giveaways," the Plaintiffs' "personalized space" was invaded by advertisers providing persistent and unwanted content as an intentional interference with the Plaintiff's interest in solitude.
>
> The Plaintiffs are getting their personal Instagram accounts "invaded" by hundreds of advertisers, some of which [are] even providing pornographic or quasi-pornographic, highly offensive, and unwanted content. The Plaintiffs' information is shared by these advertisers without their knowledge or consent. The persistence and frequency of some advertisers amounts to hounding.

(Id. at ¶¶ 27, 29, 48 61-66, 70)

In sum, Plaintiff voluntarily spent time researching influencers she wished to follow in hopes of winning a cash prize through what she claims is a bogus lottery. She then spent "much longer than 30 seconds" to "follow" each of the 62 influencers she decided to follow. (Id. at ¶ 64) She then voluntarily continued to follow them in order to remain eligible to win the lottery and to find out who did win the lottery. She did not win, and she did not discover who did win, and she surmises it was all a ruse to allow the influencers to beef up their followers to earn money for themselves.

None of Plaintiff's time spent deciding whether to enter a lottery and none of her time voluntarily clicking on an influencer's page to "follow" him or her constitutes cognizable injury. The case law is clear and binding on this point. See, e.g., Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019) (holding that allegations of wasted time

3

resulting in a "brief, inconsequential annoyance" cannot "invoke the jurisdiction of the federal courts"). Plaintiff makes no cogent argument to the contrary. Instead, she attempts to shift focus to the possible earnings of the alleged perpetrators of the alleged lottery scam. But none of their earnings caused injury to the Plaintiff. She paid nothing to enter the lottery. She was promised nothing in exchange for entering the lottery, and she expended at most 62 minutes of energy in the process. Accordingly, Defendants' Motion to Dismiss Amended Complaint is due to be granted based on Plaintiff's continued failure to establish Article III standing.

Following the filing of her response to Defendants' Motion to Dismiss, Plaintiff moved for leave to file a Second Amended Complaint. (Dkt. 60) Plaintiff's proposed amendment seeks only to add seven additional defendants; she does not seek to cure the standing defect that required dismissal of the previous iterations of the Complaint. (Dkt. 60-1) Accordingly, the Court denies Plaintiff's Motion for Leave to File Second Amended Complaint.

This action is dismissed without prejudice for lack of subject-matter jurisdiction. Because Plaintiff has repeatedly failed to allege Article III standing, she will not be given an additional opportunity to amend her pleadings.

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint, (Dkt. 47), is **GRANTED**.

2. Plaintiff's Motion for Leave to File Second Amended Complaint, (Dkt. 60), is **DENIED**.

3. Plaintiff's Motion to Strike Notice of Supplemental Authority, (Dkt. 58), is **DENIED**.

4. The Amended Complaint, (Dkt. 44), is **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT-MATTER JURISDICTION**. Plaintiff will not be afforded an additional opportunity to amend her pleadings.

5. The Court retains jurisdiction over this action solely for the purpose of ruling on Defendants' Motion for Rule 11 Sanctions. (Dkt. 49)

**DONE** and **ORDERED** in Tampa, Florida, this 29th day of November 2021.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person